UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| TRAVIS W. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  07-1253 |
| | ) | |
| FRANK L. SHAW, ROGER E. WALKER, | ) | |
| JR, BARBARA HURT, RICHARD BARD, | ) | |
| LAURA NORTON and PAUL CAMPBELL, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF THE PLAINTIFF, TRAVIS W. MOORE, IN
OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS**

**I.  INTRODUCTION**

Travis W. Moore ["Moore"], an employee of the Illinois Department of Corrections

["Department"], maintains this constitutional tort claim against five officials of the Department and an

official of the Illinois Department of Central Management Services ["CMS"].[1]  In his complaint, he

alleges that the Defendants demoted him from his position as a sergeant with the Department and

deprived him of a property interest in a manner which was contrary to his rights under the Due Process

Clause of the Fourteenth Amendment.

As their initial response to Moore's complaint, the Defendants seek its dismissal pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure.  They claim that:  a) his demotion did not

---

[1]     The individual Defendants are:  a) Frank Shaw, the Warden at the Hill Correctional Center;
b) Roger Walker, the Director of the Department; c) Barbara Hurt, a Deputy Director of the
Department; d) Richard Bard, the Department's Chief of Labor Relations; e) Laura Norton, the
Department's Chief of Personnel; and f) Paul Campbell, the Director of CMS.

deprive Moore of due process of law because of the protections available to him under the collective bargaining agreement covering his employment; b) at the time of the actions in question the Defendants' conduct did not violate clearly established law and they are, accordingly, entitled to qualified immunity; and c) Moore's claims to equitable relief against the Defendants in their official capacities are barred by the Eleventh Amendment to the Constitution.

For reasons which follow, the Defendants' contentions are without merit and their motion should be denied.

## II.  THE STANDARDS GOVERNING THIS COURT'S CONSIDERATION OF THE MOTION TO DISMISS

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a short and plain statement of the claim which will provide a defendant with fair notice of the plaintiff's claim and the grounds upon which its rests [See *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113, 122 L.Ed.2d 517 (1993)].  It does not require a claimant to set out in detail the facts upon which he bases his claim [See *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); and *Leatherman* at p.168].

In considering a motion to dismiss maintained under Rule 12(b)(6) of the Federal Rules of Civil Procedure a court must accept all well pleaded allegations in the complaint as true [see *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir.1996) and *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir.1995)] and draw all reasonable inferences in favor of the nonmoving party [see *Covington Court, Ltd. v. Village of Oak Brook*, 77 F.3d 177 (7th Cir.1996)].  It must view the allegations in the complaint in a light most favorable to the claimant [see *Gomez v. Illinois*

*State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987); and *Caldwell v. City of Elwood*,

959 F.2d 670 (7th Cir.1992)].  A court should not dismiss a complaint unless it is clear that there is no

set of facts which a claimant could prove consistent with the pleadings that would entitle him to relief

[see *Conley v. Gibson*, 355 U.S.41 (1957)].

## III.  ARGUMENT

### A)  Moore's complaint alleges viable claims under the Due Process Clause.

In order to sustain his claim under the Due Process Clause, Moore must demonstrate that:  1)

he possessed a cognizable property interest in his employment; 2) he was deprived of that property

interest by the government; and 3) the deprivation was accomplished without providing him adequate

due process [see *Schroeder v. City of Chicago*, 927 F.2d 957, 959 (7th Cir.1991); *Bigby v. City of

Chicago*, 766 F.2d 1053, 1056 (7th Cir.1985); and *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201

(7th Cir.1993)].

In this proceeding Moore claims that in demoting him from a sergeant to a correctional officer

he was deprived of due process in two separate respects.  First, he was deprived of a pre-deprivation

hearing that would afford him with:  a) an opportunity to be made aware of the reasons his demotion

was contemplated; and b) a reasonable and meaningful opportunity to respond to those reasons before

any decision concerning his demotion was made.  Second, following his demotion he was not provided

an opportunity for a hearing to determine whether his demotion was supported by cause.

The Defendants essentially argue that because of the way Moore framed his complaint he has

effectively "pled himself out of court" and has not stated claims entitling him to a recovery under the

Due Process Clause.  They assert  that the complaint, on its face, shows that he received all the process

he was due.[2]

With respect to Moore's claim that he was denied a pre-deprivation hearing, the Defendants correctly note that such a hearing is not always required. They then mistakenly claim that because his union was involved in a grievance relating to his promotion before his demotion, his interests were "represented" [p.5 of the Defendants' brief]. Thus, a pre-deprivation hearing was not in a constitutional sense required.

As to Moore's claim that he was denied a post-deprivation hearing, the Defendants argue that the collective bargaining agreement covering his employment contains a grievance mechanism which provides constitutionally adequate process and he failed to take advantage of that remedy.

As will be seen, the Defendants' argument is flawed. It attempts to adopt a uniformly applicable rule for public employees that are covered by collective bargaining agreements. In so doing, it ignores the principle that due process is a flexible concept which will vary depending upon the precise facts presented in each individual case. Moreover, given the nature of Moore's situation as alleged in his complaint, the procedures which the Defendants claim are constitutionally sufficient do not satisfy constitutionally adequate process under the established standards for determining whether due process

---

[2]     Wisely, the Defendants seem to concede at least for purposes of their motion to dismiss that Moore, in being demoted, was deprived of a property interest. Property interests do not arise under the Constitution but, instead are founded in independent sources such as state law [*Loudermill v. Cleveland Board of Education*, 470 U.S. 532, 84 L.Ed.2d 494 (1985); and *Board of Regents v. Roth*, 408 U.S. 564, 33 L.Ed.2d 548 (1972)]. Our Circuit has recognized that a state statute may create a protectable interest in employment [see *Hohmeier v. Leyden Community High School District 212*, 954 F.2d 461, 464 (7th Cir.1992); *Domiano v. River Grove*, 904 F.2d 1142, 1148 (7th Cir.1990); and *Farmer v. Lane*, 864 F.2d 473, 478 (7th Cir.1988)]. Section 8b.16 of the Personnel Code [20 ILCS 415/8b.6] recognizes that with respect to merit employees a demotion like a termination can occur only for cause.

has been afforded a public employee.

1) __Moore's due process allegations as set forth in his complaint.__

In March of 2004 as a result of a score he achieved on a promotional examination, Moore was promoted to the rank of sergeant.  In July of 2004 he completed his probation and was certified in that position [see ¶9,11].[3]

Following his promotion, Moore's local union filed a grievance challenging his promotion.  The union was the collective bargaining representative of both sergeants and correctional officers.  The grievance was eventually submitted to binding arbitration and a three day hearing was held on that grievance in June of 2005 before a duly selected arbitrator.  Although the grievance hearing related to the legitimacy of Moore's promotion, he:  a) was not a party to the grievance; b) was not called as a witness in the arbitration proceeding; c) was not provided an opportunity to participate and be heard in the grievance proceeding; and d) was not given any notice of the arbitration proceeding [¶14,15].

In August of 2005 the arbitrator rendered his decision.  He concluded that the score Moore achieved on his promotional examination incorrectly awarded him two points.  When those points were removed, his score came within ten points of the next highest scoring applicant who was more senior than he.  Because of a pre-existing agreement between the Department and his union, if a more senior candidate scores within ten points of a less senior applicant, the more senior candidate is entitled to be awarded the position [¶16-18].

---

[3]     Unless otherwise stated, paragraph references in this instrument refer to the paragraphs common to all counts of the complaint.

At no time during the arbitration hearing was Moore given an opportunity to testify or present evidence with respect to the issues which caused the arbitrator to reduce his score.  In fact, no evidence was presented which would have explained why Moore was scored as he was on the competitive examination.  Had such evidence been presented, the arbitrator would not have reduced Moore's score [¶19].

On November 15, 2005 Moore was informed that he was being demoted from the rank of sergeant to correctional officer and that his demotion was non-appealable.  As a result of his demotion, his salary was reduced in the approximate amount of five hundred dollars per month [¶22,23].

Following his demotion, Moore requested that his union file and pursue a grievance on his behalf challenging his demotion.  However, his union refused to either file or pursue such a grievance [¶35].

**2)  General due process requirements.**

An essential requirement of due process is that a deprivation of property be preceded by notice and an opportunity to be heard appropriate to the nature of the case [See *Mullane v. Central Hanover Bank and Trust Company* 339 U.S. 306, 94 L.Ed. 865 (1950) and *Loudermill* at p.542]. In almost every setting where important decisions turn on questions of fact due process requires an opportunity to confront and cross examine adverse witnesses [see *Goldberg v. Kelly,* 397 U.S. 254, 269, 25 L.Ed.2d 287 (1970)].  Moreover, an impartial decisionmaker is essential to be compliant with due process [see *Goldberg* at p.271].

The hearing must be at "a meaningful time and in a meaningful manner" [see *Armstrong v. Manzo* 380 U.S. 545, 552, 14 L.Ed.2d 62 (1965)]. Unlike some legal rules, due process is not a technical concept with a fixed content unrelated to time, place and circumstances [*Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 6 L.Ed.2d 1230 (1961); *Mathews v. Eldridge*, 424 U.S. 319, 334, 47 L.Ed.2d 18 (1976)]. Instead, it is a flexible requirement which calls for such procedural protections as a particular situation demands [see *Morrissey v. Brewer,* 408 U.S. 471, 481, 33 L.Ed.2d 484 (1972); and *Mathews* at p.334].

Accordingly, whether Moore received adequate process requires an analysis of the governmental and private interests which are affected. Generally, this requires consideration of three distinct factors. First, the private interest that will be affected by the official action. Second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substituted procedural safeguards. Third, the government's interest, including the fiscal and administrative burdens, that the additional or substituted procedural requirements would entail [see *Mathews* at p.334].

The Defendants' claim that the grievance mechanism available to Moore under his collective bargaining agreement satisfies the Due Process Clause is fundamentally flawed. It ignores both the principle that due process is flexible and the procedural protections which will satisfy it are not fixed in all situations and because it is a flexible concept adequate process will vary depending upon the particular situation presented.

The Defendants' notion that for purposes of due process one procedure (i.e., those available

through Moore's union) fits all circumstances ignores the nature of Moore's due process claim as alleged in his complaint. Moreover, the Defendants' argument cannot withstand scrutiny when analyzed in accordance with factors articulated in *Mathews v. Eldridge* (op.cit. 1976).

As will be shown the application of the *Mathews* balancing process to Moore's situation as alleged in his complaint reveals that he was not afforded constitutionally adequate process in connection with his demotion.

**3) <u>The failure to provide Moore with a pre-deprivation hearing.</u>**

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 84 L.Ed.2d 494 (1985), recognized that under the Due Process Clause a tenured public employee is entitled to a pre-deprivation hearing prior to any decision being made removing him from his position. The *Loudermill* court reached this conclusion after applying the test announced in *Mathews v. Eldridge* (op.cit.1976). Because the plaintiff in *Loudermill* was by state law entitled to a full evidentiary hearing after his deprivation, it concluded that all due process required prior to his deprivation was notice of the charges against him, an explanation of the employer's evidence and an opportunity to present his side of the story.

Our Circuit has recognized that due process requires that a pre-termination hearing be a real one and not a sham or pretense. If the decision has effectively been made prior to the pre-deprivation hearing, it would be a sham and a victimized employee is in that circumstance entitled to go forward with a procedural due process claim [see *Ryan v. Illinois Department of Children and Family Services*, 185 F.3d 751, 762 (7th Cir.1999); *Levenstein v. Salafsky*, 164 F.3d 345, 351-52 (7th Cir.1998); and *Cliff v. Board of School Commissioners of the City of Indianapolis*, 42 F.3d 403,

414 (7th Cir.1994)].

As the Defendants' argument goes because Moore's union was his exclusive bargaining representative and participated in the earlier arbitration hearing, that hearing for at least due process purposes was a constitutionally permissible substitute for a pre-deprivation hearing.

Applying the *Mathews v. Eldridge* factors to Moore's situation (as alleged in his complaint), this argument does not hold water.

First, the private interest effecting Moore as a result of the Defendants' actions was significant. He was demoted from the rank of sergeant to the rank of correctional officer and in the process sustained a reduction in pay of $500.00 per month [¶23].

Second, the risk of an erroneous deprivation was significant if the procedures used (i.e., the arbitration hearing initiated on the union's grievance attacking Moore's promotion) were relied upon as a substituted safeguard. The Defendants' claim that the union, as Moore's collective bargaining representative, was present throughout the arbitration and effectively represented his interests. The complaint shows otherwise. The arbitration hearing was initiated not to support Moore's promotion, but instead to challenge it [¶14,15]. The union in the arbitration proceeding was effectively Moore's adversary, not his proponent. As the complaint suggests, he had no representation during the arbitration hearing.

In considering whether there was a risk of an erroneous deprivation because of what occurred during arbitration, it is instructive to note that Moore had no opportunity to participate either as a party or as a witness. The decision of the arbitrator concluding that Moore achieved two more points than he deserved was made without the benefit of Moore's explanation as to why he should have been

awarded those points [¶15].

Moore never had an opportunity during the course of the arbitration hearing to present evidence to the arbitrator concerning why he was entitled to the points awarded him. Had such evidence been presented, the arbitrator would not have reduced his score [¶15-17, 19]. The allegations in the complaint show that in the arbitration proceeding which preceded his demotion Moore was not present and no one was there to represent his interests. Contrary to the Defendants' contention, the union was present as his adversary, not his representative. Had there been evidence presented to the arbitrator supporting the score Moore was originally awarded through either his presence or someone advocating on his behalf, it is possible that a constitutionally adequate substitute for a pre-deprivation hearing was provided. However, based upon the complaint, this did not occur. Thus, the application of the second *Mathews v. Eldridge* factor to the situation presented in Moore's complaint undermines rather than supports the Defendants' contention that the arbitration was an adequate substitute for a pre-deprivation hearing.

Finally, at this stage of the proceeding the Defendants have pointed to no legitimate governmental interest which suggests that the burdens of providing Moore with a pre-deprivation hearing outweighed his private interests. The complaint alleges that in the past the Department has not demoted an individual awarded a position as the result of a competitive process even when a grievance challenging that decision was sustained in arbitration [¶21]. To the extent the Department would have faced burdens constitutionally excusing it from providing Moore with some pre-deprivation hearing, the record at this stage of the proceeding does not disclose them.

In *Hudson v. City of Chicago*, 374 F.3d 554 (7th Cir.2004), a case relied upon by the Defendants, our Circuit after employing the *Mathews v. Eldridge* test noted the value of pre-deprivation process even where collective bargaining remedies are available to an employee.  It noted that in some situations where the facts were undisputed and the punishment truly automatic, the *Loudermill* right to a pre-termination hearing may not be required, but in situations where there was a factual dispute and the employer enjoyed some degree of discretion in considering disciplinary options a pre-deprivation hearing is required.  Unlike the *Hudson* plaintiffs, Moore has never had his opportunity to tell his side of the story.[4]

Applying the *Mathews v. Eldridge* framework to Moore's complaint, he does adequately allege that he was denied a constitutionally adequate pre-deprivation hearing.

### 4)  <u>The failure to provide Moore with a post-deprivation hearing.</u>

Relying upon a line of cases from our Circuit[5], the Defendants' claim that Moore's post-deprivation due process rights were satisfied because the collective bargaining agreement governing his employment provided him an opportunity to grieve his demotion which constitutes constitutionally adequate process.  They further claim that his union's failure to honor his request to grieve his demotion

---

[4]    The *Hudson* court denied the plaintiffs' *Loudermill* claims reasoning that although they were entitled to some sort of pre-deprivation hearing to at least meet with their supervisors and present their side of the story, they effectively received what *Loudermill* required when they were allowed to discuss their situation with their supervisors.  As the complaint discloses, Moore did not have those opportunities.

[5]    *Winston v. U.S. Postal Service*, 585 F.2d 198 (7th Cir.1978); *Buttitta v. City of Chicago* (op.cit.1993); and *Hudson v. City of Chicago* (op.cit.2004).

does not undermine the constitutional adequacy of that process.

In their brief, the Defendants urges the application of a per se rule which would establish the principle that whenever a collective bargaining agreement provides a mechanism for the possible prosecution of a grievance to binding arbitration due process has been satisfied. Our Circuit has not gone that far.

*Winston, Buttitta* and *Hudson* acknowledge that a collective bargaining agreement grievance process may in certain circumstances satisfy the requirements of the Due Process Clause. However, those cases do not hold that in all circumstances the existence of such grievance remedies satisfies the requirements of the Due Process Clause.

The *Winston* court observed that the "very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation" [p.209]. It then reviewed the adequacy of the available union grievance process in terms of the three part *Mathews v. Eldridge* test. It concluded in that case that the risk of an erroneous deprivation of the plaintiffs' interest was minimal and the probable value of additional or substituted procedural safeguards was non-existent. It reached this point because the record in that case reflected only that the plaintiffs were unable to convince their union representative as to the merits of taking their case to arbitration. There was no evidence in that case that the union was the plaintiffs' adversary as is the situation in the instant proceeding. Moreover, the Court noted that under the "National Labor Relations Act", the plaintiffs could have pursued their grievance alone without the assistance of the union [footnote 32].

The *Buttitta* court reached its result only after applying the *Mathews v. Eldridge* framework to the facts presented in that case. The court concluded that the risk of an erroneous deprivation in that

case was slight since the issues at hand turn upon the evaluation of "routine, standard and unbiased medical reports by physician specialists" [p.1206]. There was no evidence in that case that the plaintiff's union was essentially his adversary with respect to the employment matter at issue.

The *Hudson* court cited with approval *Buttitta* and *Winston*. Although it did not explicitly rely upon the *Mathews v. Eldridge* factors, its reliance upon W*inston and Buttitta* together with its analysis of the collective bargaining grievance process seems to suggest that it too believed that the opportunities in that case for an erroneous deprivation were minimal given the safeguards in place.

The application of the *Mathews v. Eldridge* framework to the instant situation does not produce the same conclusion. In those three cases there was no evidence (unlike the allegations in Moore's complaint) that the union was advocating a position contrary to the plaintiffs. While the union may not have been persuaded that the plaintiff in those cases had a legitimate claim, there was no evidence that it was actively working against the plaintiff's position. In contrast in this case, the complaint makes clear that the union opposed Moore's promotion. It filed and prosecuted a grievance challenging his promotion and took that grievance to binding arbitration [¶14]. Thus, when it refused to pursue a grievance on his behalf challenging his demotion [¶35], its refusal was entirely consistent with the position it advocated in the earlier grievance and arbitration proceeding.

In view of the foregoing, the collective bargaining grievance process in the instant case cannot satisfy the second factor in the *Mathews v. Eldridge* framework. Because no one was advocating in support of Moore's position through the grievance mechanism and his union was antagonistic to his position, the risk of an erroneous deprivation was strong. Given the fact that the union served as the gatekeeper for the grievance process and Moore had no opportunity to pursue that process, the

probable value of additional substituted procedural safeguards was great.

Borrowing from dictum in *Winston* and *Hudson*, the Defendants' claim that if Moore was dissatisfied with his union's inaction in pursuing a grievance he could have pursued a fair representation claim against it.

First, this seems to beg the question and does not cure a constitutionally deficient process. Second, in this case the ability of Moore to pursue such a claim was limited.  Under §10(b)(1) of the "Illinois Public Employer Labor Relations Act" [5 ILCS 315/10(b)(1)], Moore could only pursue a breach of the duty of fair representation in the event his union engaged in "intentional misconduct" in representing him.  While Moore's union may not have supported his position and in fact challenged his promotion, its conduct in that respect does not necessarily rise to the level of intentional misconduct.

Merely because a collective bargaining agreement provides a grievance and arbitration mechanism does not mean the requirements of the Due Process Clause are satisfied.

In *Parrett v. City of Connorsville, Indiana*, 737 F.2d 690, 696-698 (7th Cir.1984), our circuit held that remedies under a collective bargaining agreement did not represent constitutionally adequate process where the collective bargaining process was sluggish and could not provide full relief to the employee.  More recently, Judge Scott, in *Sottoriva v. Clapps*, 2007 WL 2700532 (C.D. Ill.), refused to grant summary judgment in a case in which the defendants claimed a collective bargaining grievance process satisfied the Due Process Clause.  In that case, the plaintiff availed himself of a grievance process, but an issue of fact existed concerning "the sufficiency of the proceeding" [see footnote 6].

In this case, a very real issue exists concerning the sufficiency of the collective bargaining

remedies available to Moore.  The collective bargaining materials appended to the Defendants' motion contain a portion entitled "SPECIAL GRIEVANCES" which provides that certain appeals such as those relating to a demotion would begin "at a special Step 3 meeting."  Article V, Section 4 of the collective bargaining agreement is not appended to the Defendants' motion.  Accordingly, Moore attaches a copy to this document.  As can be seen, the grievance at Step 3 can only be presented by the union.  Thus, Moore had no opportunity to present a grievance challenging his demotion if his union was challenging his promotion.  His fate rested solely in the hands of his union and his union had vigorously opposed his promotion.

Applying the per se argument urged by the Defendants would undermine the principle that due process is a flexible requirement which calls for such procedural protections as a particular situation demands and in this case would not pass muster under the test announced in *Mathews v. Eldridge*.

**B)  The Defendants are not entitled to qualified immunity.**

*Harlow v. Fitzgerald*, 457 U.S. 800, 73 L.Ed.2d 396 (1982), recognized that governmental officials performing discretionary functions are generally shielded from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

In *Rakovich v. Wade*, 850 F.2d 1180 (7th Cir.1988) our Circuit articulated the "clearly established" standard by stating:

> "We caution that just as a right alleged violated should not be characterized or defined so generally that invariably guiding law is found to show that the right was clearly established, the right should not be defined to intricately that invariably guiding law never can be found" [p.112].

In *Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir.1996) it rejected the narrow view that a

claimant must present caselaw which is the precise parallel to the incident at issue in order to overcome

qualified immunity stating:

> "The defendants bemoan the fact that there is no prior case directly on point with facts
> identical to this case. Under the doctrine of qualified immunity, liability is not predicated
> upon the existence of a prior case that is directly on point. See *McDonald v. Haskins*,
> 966 F.2d 292, 293 (7th Cir.1992). The question is whether a reasonable state actor
> would have known that his actions, viewed in the light of the law at the time, were
> unlawful. *Id.* at 294. We believe that reasonable persons standing in the defendants'
> shoes at the time would have reached just such a conclusion" [p.17].

As the doctrine has developed, a public official can still be on notice that his conduct violates

established law even in novel factual circumstances. The facts of a case need not be "fundamentally

similar" to those of a prior case in order for a claimant to overcome qualified immunity. The salient

question is whether the state of the law at the time of the alleged misconduct gave a public official fair

warning that his conduct was unconstitutional [*Hope v. Pelzer*, 536 U.S. 730, 740-41, 153 L.Ed.2d

666 (2002); and *McGreal v. Ostrov*, 368 F.3d 657, 683 (7th Cir.2004)].

A qualified immunity analysis requires a twofold inquiry. Initially, viewing the facts in the light

most favorable to the party asserting the injury did the Defendants' conduct violate a constitutional

right? If so, was the right in question "clearly established at the time of the violation" [*Saucier v. Katz*,

533 U.S. 194, 201, 150 L.Ed.2d 272 (2001)]?

In answering the second inquiry, the salient question is not whether there is a prior case on all

fours with the current claim, but whether the state of the law at the relevant time gave the Defendants

fair warning that their treatment of Moore was unconstitutional [see *McGreal* at p.683].

The Defendants claim that they are insulated from Moore's due process claims by qualified

immunity because our Circuit has recognized that a grievance system prescribed by a collective bargaining agreement "can satisfy due process." Ignoring the plain language of the complaint [¶35] they then claim Moore "simply refused to avail himself of such procedures [p.8 of the Defendants' brief].

Qualified immunity should not be available to the Defendants with respect to Moore's claim that he was demoted without being afforded a constitutionally adequate pre-deprivation hearing. As early as *Loudermill*, which was decided twenty years <u>before</u> Moore's demotion, the Supreme Court held that a public employee protected by a civil service system is entitled prior to a deprivation to a hearing in which he is informed of the possible deprivation, provided the evidence supporting his employer's reasons for the contemplated action and an opportunity to tell his side of the story. As Moore alleges, all of this was denied him prior to his demotion.

The fact that Moore was protected by a collective bargaining agreement and an arbitration hearing occurred prior to his deprivation over a grievance brought by his union challenging his promotion does not alter the qualified immunity equation for two reasons.

First, our Circuit in *Hudson* reasoned that notwithstanding the fact that a public employee was protected by a collective bargaining agreement he is still entitled to the *Loudermill* type protections [see *Hudson* at pp.560-563].

Second, *Hudson,* in considering whether the plaintiffs were entitled to *Loudermill* type of protection, applied the factors articulated in *Mathews v. Eldridge* (op.cit.1976). These factors had been formulated twenty-nine years <u>before</u> Moore's demotion. A reasonable public official considering these factors would reasonably have been aware that Moore's private interests would have been significantly affected by his demotion, the previous arbitration hearing in which Moore had no

opportunity to participate and his union was his adversary rather than his ally provided high risk that an erroneous decision might be made concerning Moore's interests justifying the need for some substituted or additional safeguards.

Finally, based upon the pleadings before the Court, there is nothing to suggest that the fiscal or administrative burdens of the Department in this instance were so great that to provide Moore with the minimum protections *Loudermill* requires would have burdened the state.

The Defendants' claim for qualified immunity with respect to the denial of a post-deprivation hearing for Moore fairs no better. The cases relied upon by the Defendants in support of their proposition that the collective bargaining remedies provided Moore with all the process he was due (*Winston, Buttitta* and *Hudson*) reach that conclusion not only because of the existence of collective bargaining grievance remedies, but because employing those remedies within the framework of the analytic standards adopted by *Mathews v. Eldridge* they provided constitutionally adequate process.

The same cannot be said in this case. For reasons stated above, the risk of an erroneous deprivation was high if Moore could not be heard. Under the collective bargaining agreement at the Step 3 of the grievance process in which grievances concerning demotions are instituted, it was Moore's union not Moore who had the opportunity to pursue a grievance. In this case, Moore's union was so opposed to his promotion that it had filed and prosecuted a grievance challenging it. It would be obvious to a reasonable public official in that scenario that the risks of an erroneous deprivation would be high since Moore's side of the story was never heard or presented.

Our Circuit in *Parrett* which was decided twenty-one years before Moore's deprivation concluded that even though a public employee might have available to him collective bargaining

grievance remedies those remedies did not always represent adequate alternative procedures satisfying the Due Process Clause.  In that case, the court determined that the remedy was constitutionally inadequate because the process was sluggish and the remedy was incomplete.  In this case, the remedy was not only incomplete, but also non-existent since the union, Moore's opponent with respect to his promotion, refused to pursue a grievance on his behalf at the Step 3 stage.

A reasonable public official applying the standards of *Mathews v. Eldridge* and sensitive to the holding in *Parrett* would have known in this instance Moore's entitlement to constitutionally adequate process did not exist with respect to his collective bargaining remedies and substituted procedural safeguards were necessary to satisfy his entitlements under the Due Process Clause.

**C)  The Eleventh Amendment does not bar Moore's claim for equitable relief.**

In his complaint, Moore sues the Defendants in their official capacities for purposes of affording him equitable relief [¶2-7].  In the prayer for relief in his complaint, he seeks equitable relief in the form of reinstatement to the rank of sergeant [¶13].

The Defendants' claim that the Eleventh Amendment prevents this Court from considering whether equitable relief should be afforded Moore against the Defendants in their official capacities.

The Defendants are generally correct that the Eleventh Amendment can bar a district court from adjudicating constitutional tort claims against public employees in their official capacities.  However, the application of that principle to the case at bar is unwarranted given the nature of Moore's claims.

A suit maintained against a state official in his official capacity is not a suit against the official, but is instead against the official's office [see *Brandon v. Holt*, 469 U.S. 464, 471, 83 L.Ed.2d 878 (1985)].  Accordingly, it is no different from a suit against the state itself [see *Will v. Michigan*

*Department of State Police*, 491 U.S. 58, 105 L.Ed.2d 45 (1989)].  A state official sued in his

official capacity for injunctive relief is considered a person under Section 1983 because "official

capacity actions for prospective relief are not treated as actions against the state" [see *Kentucky v.

Graham*, 473 U.S. 159, 167, N.14, 87 L.Ed.2d 114 (1985) and *Will* at footnote 10].

　　　While the Eleventh Amendment generally bars federal jurisdiction over lawsuits against state

officials acting in their official capacities when the state is the real party at interest [see for example *MCI

Telecomm Corp. v. Illinois Bell Telephone Company*, 222 F.3d 323, 337 (7th Cir. 2000)], there are

three exceptions to this rule.  The first is where Congress has abrogated the

state's immunity from suit through an unequivocal expression of its intent to do so through a valid

exercise of its power.  The second is when a state has properly waived its immunity and consented to

the suit in federal court.  The third is when the plaintiff seeks prospective equitable relief for ongoing

violations of federal law under the doctrine first announced in *Ex Parte Young*, 209 U.S. 123, 159-60,

52 L.Ed. 714 (1908) [see *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002)].

　　　In their motion, the Defendants argue that the third *Ex Parte Young* exception is not applicable

in this case.  They mistakenly assume, for purposes of their argument, that Moore's claims involve a

constitutional tort in which has been completed and no ongoing violation of federal law is present.

　　　In determining the applicability of the *Ex Parte Young* doctrine to a particular case, a Court

need only conduct a "straight forward inquiry into whether [the] complaint alleges an ongoing violation

of federal law and seeks relief properly characterized as prospective" [see *Idaho v. Coeur' dAlene

Tribe of Idaho*, 521 U.S. 261, 296, 138 L.Ed.2d 438 (1997); and *Verizon Maryland, Inc. v. Public

Service Commission of Maryland*, 535 U.S. 635, 645, 152 L.Ed.2d 871 (2002).

**Page 22 of  27**

The Defendants' argument would be well founded in many constitutional tort claims where the unlawful conduct is complete and there is no ongoing violation of federal law claimed.  This is a different case, however, since the complaint makes clear the Defendants' violations of the Due Process Clause is continuing because they have yet to provide Moore with a post-deprivation hearing.

A procedural due process claim involves a two step analysis.  First, a Court must consider whether the plaintiff was deprived of a constitutionally protected interest in his liberty or property.  If he was, then the second step requires an analysis as to whether he received the process he was due with respect to that deprivation [see *Logan v. Zimmerman Brush Company,* 455 U.S. 422, 428, 71 L.Ed.2d 265 (1982); *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996); and *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir.1996)].

The constitutional violation in a 1983 claim based upon the Due Process Clause is not complete when the deprivation occurs. It is not complete unless and until the state fails to provide due process [see *Zinermon v. Burch*, 494 U.S. 113, 126, 108 L.Ed.2d 100 (1990); and *Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir.2002)]. In this case, the constitutional violation is not the Defendants' actions in demoting Moore, but instead their failure to provide him with hearings which comport with the Due Process Clause. To the extent Moore's claims were based only upon the Defendants' failure to provide him with a pre-deprivation hearing as required by *Loudermill*, the Defendants' argument may be founded since the constitutional violation became complete when Moore was demoted. In this case, however, the violation of federal law also includes the failure of the Defendants to provide Moore with <u>any</u> post-deprivation process. This violation of the law continues to the present.

In *Sonnleitner* our Circuit, in a due process claim arising out of a public employee's discharge from employment, invoked the Eleventh Amendment to bar an official capacity suit against state officials for injunctive relief. It reasoned that because the plaintiff eventually received (albeit late) a post-deprivation hearing before the Wisconsin Personnel Commission the claims he was maintaining related to a past act rather than an ongoing violation of federal law. It suggested, however, that its *Ex Parte Young* analysis would have been different in that case had the lawsuit been brought during the pendency of his appeal to that Commission where remedies available to him, depending upon timing, could have been included either a prompt post-disciplinary hearing or reinstatement pending an opportunity to be heard. In that situation, the violation of federal law would still have been ongoing.

Page 24 of 27

The instant case falls within that species of due process claims. Because Moore received no post-deprivation process, the violations of federal law are ongoing. This Court, notwithstanding the Eleventh Amendment, could under the *Sonnleitner* rationale provide Moore with a remedy by directing a hearing or reinstating him to sergeant pending an opportunity to be heard. Such relief would be fully consistent with the *Ex Parte Young* doctrine.

Because this case presents the situation where the violation of the Due Process Clause is ongoing and this Court is capable of carving out remedies providing prospective relief consistent with the doctrine of *Ex Parte Young*, it would at most be premature for this Court to dismiss the official capacity claims advanced by Moore against the Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff, Travis W. Moore, respectfully requests that the Defendants' motion to dismiss be denied.

TRAVIS MOORE, Plaintiff

BY: ___s/ James P. Baker_____
James P. Baker
        Bar Number: 0097802
        Baker, Baker & Krajewski, LLC
        415 South Seventh Street
        Springfield, Illinois 62701
        Telephone: (217) 522-3445
        Facsimile: (217) 522-8234
        E-mail: brendabakerlaw@sbcglobal.net
        (Memorandums/mooretravismtdopposition 012808)

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on January 30, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Amy Gerloff
Office of the Attorney General
500 South Second Street
Springfield,  Illinois   62706
agerloff@atg.state.il.us

       By: s/ James P. Baker
        James P. Baker
        Baker, Baker & Krajewski, LLC
        415 South Seventh Street
        Springfield, Illinois 62701
        Telephone: (217) 522-3445
        Facsimile: (217) 522-8234
        E-mail: brendabakerlaw@sbcglobal.net

**E-FILED**
Wednesday, 30 January, 2008  04:38:11 PM
Clerk, U.S. District Court, ILCD



# AGREEMENT

between

# AFSCME

American Federation of State,
County and Municipal Employees,
Council 31, AFL-CIO

## and

# STATE OF ILLINOIS

Department of
Central Management Services



July 1, 2004 – June 30, 2008



RC-06-OCB   RC-09-OCB   RC-10-OCB   RC-14-OCB
RC-28-OCB   RC-42-OCB   RC-62-OCB   RC-63-OCB

# ARTICLE V

## Grievance Procedure

**Statement of Principle.** The parties agree that in order for the grievance procedure to function efficiently and effectively, all grievances must be resolved at the lowest possible level of the Grievance Procedure. Therefore, the parties agree that all persons responsible for resolving grievances at all levels of the procedure shall be vested with sufficient authority to undertake meaningful discussions and to settle the grievance, if appropriate.

In order to reduce the number of grievances advanced to Step 4 of the Grievance Procedure, upon review, if an Agency or a local Union is found to have a large percentage of its grievances being advanced to the fourth level, a committee made up of representatives of the Union and CMS shall meet and endeavor to determine if all necessary means of resolving the grievances have been exhausted at the lower levels of the grievance procedure. If it is found that all necessary means to resolve a grievance(s) have not been exhausted, the committee will return the grievance(s) to the appropriate lower step for resolution.

### Section 1. Grievance

a) A grievance is defined as any difference, complaint or dispute between the Employer and the Union or any employee regarding the application, meaning or interpretation of this Agreement or arising out of other circumstances or conditions of employment.

b) A written grievance shall contain a statement of the grievant's complaint, the Section(s) of the Agreement allegedly violated, if applicable, the date of the alleged violation and the relief sought. The form shall be signed and dated by the grievant. Improper grievance form, date or section citation shall not be grounds for denial of the grievance.

c) Grievances may be processed by the Union on behalf of an employee or on behalf of a group of employees or itself setting forth name(s) or group(s) of the employee(s). Either party may have the grievant or one grievant representing group grievants present at any step of the grievance procedure, and the employee is entitled to Union representation at each and every step of the grievance procedure. The resolution of a grievance filed on behalf of a group of employees shall be made applicable to the appropriate employees within that group.

d) Nothing shall diminish the rights of an employee under P.A. 83-1012 or the rights of the Union under this Agreement.

### Section 2. Grievance Steps

### Step 1: Immediate Supervisor

The employee and/or the Union shall orally raise the grievance with the employee's supervisor who is outside the bargaining unit. The employee shall inform the supervisor that this discussion constitutes the first step of the grievance procedure. All grievances must be presented not later than ten (10) working days from the date the grievant became aware of the occurrence giving rise to the complaint. The immediate supervisor shall render an oral response to the grievance within five (5) working days after the grievance is presented. If the oral grievance is not resolved at Step 1, the immediate supervisor shall sign the written statement of grievance prepared for submission at Step 2 acknowledging discussion of the grievance. In those circumstances where securing the signature of the first level supervisor who is physically not available to sign would have adversely affected a timely submittal to the second level,

[6]

the grievance will be submitted to the second level without such signature. A copy of the grievance shall subsequently be provided to the first level supervisor for such signature. The parties recognize that variations from the immediate supervisor, where mutually agreeable, may exist.

## Step 2: Intermediate Administrator

In the event the grievance is not resolved in Step 1, it shall be presented in writing by the Union to the Intermediate Administrator or his/her designee within five (5) working days from the receipt of the answer or the date such answer was due, whichever is earliest. Within ten (10) working days after the grievance is presented to Step 2, the Intermediate Administrator shall meet, discuss and attempt to resolve the grievance with the Union. If the parties are unable to resolve the grievance, the Intermediate Administrator shall render a written answer to the grievance within five (5) working days after such discussion is held and provide a copy of such answer to the Union. The written grievance shall be on an agreed upon form which shall be provided by the Union. The written grievance shall contain a statement of the grievant's complaint, the Section(s) of the Agreement allegedly violated, if applicable, the date of the alleged violation and the relief sought. The form shall be signed and dated by the grievant. Improper grievance form, date or section citation shall not be grounds for denial of the grievance.

## Step 3: Agency Head

If the grievance is still unresolved, it shall be presented by the Union to the Agency Head or his/her designee in writing within fifteen (15) working days after receipt of the Step 2 response or after the Step 2 response is due, whichever is earliest, or within fifteen (15) working days after the Step 1 response, or after the Step 1 response is due, if Step 2 is not applicable. It is agreed that appeals postmarked within the fifteen (15) working days time limit are timely. A copy of said grievance shall also be sent by the local Union to the Union's Step 3 representative. A grievance will not appear on the third level agenda unless a signed and dated grievance has been presented to the Agency Head or designee.

For the Departments of DCFS and Revenue, the Union shall be represented by a committee in each agency, made up of Union staff and four (4) bargaining unit members. For the Department of Human Services, the Union shall be represented by a committee made up of Union staff and seven (7) bargaining unit members. For the Department of Corrections, the Union shall be represented by a committee made up of Union staff and five (5) bargaining unit members. For all other Departments, the Union shall be represented by Union staff and a total of six (6) bargaining unit members representing all other Agencies. Each agency shall be represented by the agency head or his/her designee.

Agency level grievance meetings shall be convened monthly at a time and place of mutual agreement. The duration of the meeting shall be dictated by the number of grievances pending, but shall be no more than five (5) days per month. After a grievance has been discussed at a Step 3 meeting either party may place the grievance on hold status. There shall only be one hold per grievance and any deviation from same shall be on a case by case basis, following mutual consultation and agreement. If the grievance has been resolved or denied, the parties shall sign the resolution within ten (10) working days.

Attendance at such meetings shall be without loss of pay subject to reasonable attendance requirements. The bargaining unit members of the Committee shall be paid for one-half day travel, if they are traveling from the Chicago area to the Springfield area or equivalent of same.

[7]

The Committee members will be in paid status the remainder of the work day while and if in preparation for the scheduled grievance meeting. Management reserves the right to verify the use of time for travel and preparation as is stated above.

**Step 4:**

a) If the matter is not resolved at Step 3, the Union, by written notice to the Employer within fifteen (15) working days of the grievance being signed-off by the parties at Step 3, may appeal the grievance(s) to a pre-arbitration staff meeting. It is agreed that appeals postmarked within the fifteen (15) working days time limit are timely.

Pre-Arbitration Staff Meeting — CMS staff and Union staff shall meet on a monthly basis in an attempt to resolve the grievance(s) which are capable of resolution. The duration of the meeting shall be dictated by the number of grievances pending, but shall be no more than five (5) days per month. Such staff shall have the full authority to resolve those cases moved to the pre-arbitration level. If the grievance has been resolved or moved to arbitration by the Union, the parties shall sign the resolution within ten (10) working days.

**b) Arbitration**

Expedited

1. The parties agree to use an expedited arbitration system for all non-priority grievances, except as otherwise provided herein. The arbitrator shall be assigned from a designated panel. The arbitrator shall be a member of the Expedited Panel agreed upon by the parties. After the parties have signed the Step 4 resolution moving the grievance to Expedited arbitration, the parties shall arrange a place and date to conduct the hearing within a period of not more than sixty (60) days. Nothing herein precludes multiple cases being heard on the same day before the same arbitrator.

2. If either party concludes that the issues involved are of such complexity or significance as to warrant referral to the Regular Arbitration Panel, that party shall notify the other party of same at least five (5) working days prior to the scheduled time for the expedited arbitration. If there is a cancellation fee, that party shall bear the cost.

3. The hearing shall be conducted in accordance with the following:

    a) the hearing shall be informal;

    b) no briefs shall be filed or transcripts made;

    c) there shall be no formal rules of evidence;

    d) the hearing shall normally be completed within one day;

    e) if the parties mutually agree at the hearing that the issues involved are of such complexity or significance as to warrant reference to the Regular Arbitration Panel, the case shall be referred to that panel and the parties shall split the arbitrator's cost; and

    f) the arbitrator may issue a bench decision at the hearing but in any event shall render a decision within two (2) working days after conclusion of the hearing. Such decision shall be based on the evidence before the arbitrator and shall include a brief written explanation of the basis for such conclusion. An arbitrator who issues a bench decision shall furnish a written copy of the award to the parties within two (2) working days of the close of the hearing;

    g) the parties agree to attempt to arrive at a joint stipulation of facts and issues prior to arbitration;

[8]

b)  The time limits at any step or for any hearing may be extended by mutual agreement of the parties involved at that particular step.

c)  The Employer's failure to respond within the time limits shall not find in favor of the grievant, but shall automatically advance the grievance to the next steps.

d)  If the grievant has filed an appeal with the Civil Service Commission over a subject matter identical to that employee's grievance, the parties agree that the Grievance Procedure will not be applicable and the grievance shall be treated as withdrawn, unless the employee withdraws his/her appeal to the Civil Service Commission prior to a Civil Service Commission hearing being held and the grievance was timely filed and processed by the Union through the contractual grievance procedure.

e)  It is understood by the parties that the time limits for filing a grievance on a timely basis for disciplinary action shall begin on the date the employee receives the CMS-2.

## Section 4.  Special Grievances/Memorandum of Understanding

Grievances concerning discharge, suspensions pending judicial verdict, demotions, geographical transfers, reclassifications, layoffs, schedule changes pursuant to Article XII, Section 20, and the salary grade placement for new classifications pursuant to Article XXVI, Section 8 shall be processed in accordance with the Memorandum of Understanding.

## Section 5.  Number of Representatives and Jurisdictions

The number of Union stewards and the facilities they represent shall be agreed upon locally. The Union shall designate the Union stewards and representatives and shall supply a list of names in writing to the Department of Central Management Services and agency and local level administrators on a quarterly basis. Existing local agreements, except by mutual agreement, shall not be changed.

## Section 6.  Time Off, Meeting Space and Equipment Use

a)  Time Off: The grievant(s) and/or Union grievance representative(s) will be permitted reasonable time without loss of pay during their working hours to investigate and process grievances. A grievant who is called back on a different shift or on his/her day off as a result of the Employer scheduling a grievance meeting shall have such time spent in the meeting considered as time worked. Witnesses whose testimony is pertinent to the Union's presentation or argument will be permitted reasonable time without loss of pay to attend grievance meetings and/or respond to the Union's investigation. No employee or Union representative shall leave his/her work to investigate, file or process grievances without first notifying and making mutual arrangement with his/her supervisor or designee as well as the supervisor of any unit to be visited, and such arrangements shall not be denied unreasonably. Employees attending grievance meetings shall normally be those having direct involvement in the grievance. The Employer reserves the right to require reasonable documentation of time spent in processing grievances including time spent using the telephone for these purposes. The Employer agrees that such documentation of time shall not be construed to allow supervisors to question the content or merits of the grievance(s).

b)  Meeting Space and Equipment Use: Upon request, the employee and Union representative shall be allowed the use of an available appropriate room while investigating or processing a grievance; and, upon prior general approval, shall be permitted the reasonable use of telephone facilities for the purpose of investigating or processing grievances.

[10]

When feasible, and where equipment is currently available, Union stewards and/or officers may utilize electronic mail and/or facsimile equipment for the purpose of investigating or processing grievances. Such transmission will be primarily to expedite communication regarding such matters, will be reasonable with respect to time and volume, and will be consistent with this Article. Such use shall not include any long distance or toll calls at the expense of the Employer.

  c)  The Employer shall not be responsible for any travel or subsistence expenses incurred by employee or Union representatives in the processing of grievances.

### Section 7.  Advanced Grievance Step Filing

  Certain issues which by nature are not capable of being settled at a preliminary step of the grievance procedure or which would become moot due to the length of time necessary to exhaust the grievance steps, such as those pertaining to Article XXIII, Section 3, may by mutual agreement be filed at the appropriate advance step where the action giving rise to the grievance was initiated.

  Mutual agreement shall take place between the appropriate Union representative and the appropriate Employer representative at the step where it is desired to initiate the grievance.

### Section 8.  Pertinent Witnesses and Information

  Except as otherwise provided in Steps 4(b) and 4(c), either party may request the production of specific documents, books, papers or witnesses reasonably available and substantially pertinent to the grievance under consideration. Such request shall not be unreasonably denied, and if granted shall be in conformance with applicable laws, and rules issued pursuant thereto, governing the dissemination of such materials.

  Requests to interview the other party's witnesses shall be made through the appropriate representatives. Each party shall have the right to have its representatives present during all such interviews.

  If the request is unreasonably denied, the Union may petition the Director of Central Management Services who shall subpoena the substantially pertinent material and/or witnesses in conformance with the provisions of this Section and his/her statutory powers within ten (10) working days of receiving such request. The operating Agency shall have ten (10) working days to respond to the subpoena. Any delay shall not penalize the grievant.

### Section 9.  Stewards and Union Representatives

  Those employees acting as stewards and/or Union representatives shall not receive preferential treatment with regards to shift or job assignments. The Employer agrees, however, that such employees shall be reassigned because of operational needs only and not because of legitimate Union activity.

## ARTICLE VI

### Union Rights

### Section 1.  Union Activity During Working Hours

  Employees shall, after giving appropriate notice to their supervisor, be allowed reasonable time off with pay during working hours to attend grievance hearings, labor/management meetings, negotiations of their own agency and/or facility supplemental agreements, meetings covering

[11]