IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| Travis W. Moore, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-1253 |
| | ) | |
| Frank L. Shaw, Roger E. Walker, | ) | |
| Jr., Barbara Hurt, Richard Bard, | ) | |
| Laura Norton and Paul Campbell, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on Defendants' motion to dismiss for failure to state a claim.  For the reasons below, the Court recommends that the motion be denied.

### Standard

To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v.

Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted).  However, the plaintiff's "' . . . allegations, [must] show that it is plausible, rather than merely speculative, that he is entitled to relief.'" Tamayo v. Blagojevich, --- F.3d ----, 2008 WL 2168638 * 6 (7th Cir. 2008)(quoted and other citations omitted).

A plaintiff can "plead himself out of court" if the facts he alleges show beyond doubt that no relief is available in federal court--that the allegations "establish an impenetrable defense to its claims."  Tamayo, 2008 WL 218638 * 9.  "A plaintiff 'pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.'" Id., *quoting* Kolupa v. Roselle Park Dist., 438 F.3d 713, 715 (7th Cir. 2006).

### Allegations

These allegations are taken as true for purposes of the motion to dismiss.

In 2004, Plaintiff was working as a correctional officer at Hill Correctional Center, when he applied for vacant sergeant positions.  He earned the second highest score in an exam given to applicants. (Complaint ¶ 8).  The sergeant position is governed by the "'Personnel

Code'" in 20 ILCS 415/1 *et seq.* and its accompanying rules. (Complaint ¶ 10).

In March 2004, Plaintiff was appointed as a sergeant over others with more seniority because his test score was more than ten points higher than those applicants. (Complaint ¶ 9). After completing a probationary period, Plaintiff was "certified" in the sergeant position in July 2004 and, under the Personnel Code and accompanying rules, could not be demoted without good cause. (Complaint ¶ 12).

The collective bargaining representative for sergeants and correctional officers, the American Federation of State County and Municipal Employee ("AFSCME"), filed a grievance challenging Plaintiff's promotion, apparently on behalf of one of the more senior applicants. (Complaint ¶ 14). An arbitrator held a hearing over several days in June 2005, and ultimately reduced Plaintiff's score by two points because of "an undocumented experience in one category." (Complaint ¶ 16). Plaintiff had no opportunity to present his side at the arbitration hearing, nor was evidence presented explaining the basis for Plaintiff's original score. If such evidence had been presented, Plaintiff's score would not have been reduced. (Complaint ¶ 19). Plaintiff was not given notice of the arbitration,

was not called as a witness, and was not given an opportunity to participate in the hearing. (d/e 10, p. 6).

The reduction meant that Plaintiff's score no longer exceeded the more senior candidate's score by more than ten. (Complaint ¶ 17). "[B]y virtue of a pre-existing agreement between AFSCME and the Department, the change in score means that the second highest scoring candidate who was senior to the Plaintiff, . . . should receive the Sergeant position . . . ." (Complaint ¶ 18). A more senior candidate with a lower score than Plaintiff was promoted and Plaintiff was demoted from sergeant to correctional officer, causing him to lose about $500.00 a month in salary.

Defendants either made or participated in the decision to demote Plaintiff. (Complaint ¶¶ 20, 22, 23). "[O]n information and belief, the Department in the past has not demoted an individual awarded and certified into a position as the result of a competitive process . . ." due to a successful grievance challenge. (Complaint ¶ 21).

Plaintiff received no pre-deprivation hearing before his demotion, nor was he provided with a prompt post-deprivation hearing. (Complaint ¶¶ 24-25). He requested AFSCME to file a grievance challenging the demotion, but AFSCME refused. (Complaint ¶ 35).

## Analysis

Plaintiff pursues, under 42 U.S.C. § 1983, procedural due process claims based on the Fourteenth Amendment. He seeks a declaratory judgment, reinstatement to the position of sergeant, and damages. He asserts that he was denied "a hearing that would afford him with an opportunity to be made aware of the reasons for his proposed demotion and a reasonable opportunity to respond to that proposed deprivation before any decision was made; and . . . an opportunity for a prompt hearing following the demotion to determine its propriety. (Complaint ¶ 13).

### I. Procedural Due Process

Defendants do not dispute that Plaintiff had a constitutionally protected interest in his position as sergeant. *See* <u>Salas v. Wisconsin Dept. of Corrections,</u> 493 F.3d 913, 926 (7th Cir. 2007)(union contract allowing termination only for good cause created property interest in job)(applying Wisconsin law). Accordingly, the Court assumes for purposes of this order that Plaintiff did have a protected interest in his sergeant position, which means that he was entitled to procedural due process both before and after he was demoted.

"Due process usually means notice and an opportunity for a hearing. State law defines property; federal law defines the process that is 'due.'" Goros v. County of Cook, 489 F.3d 857, 859 (7th Cir. 2007). "'Due process,' . . . is not a technical conception with a fixed content unrelated to time, place and circumstances . . . .' It '"is flexible and calls for such procedural protections as the particular situation demands.'" Mathews v. Eldridge, 424 U.S. 319, 334 (quoted cites omitted). In determining what "the particular situation demands", the Court considers:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest."

Hudson v. City of Chicago, 374 F.3d 554, 559-60 (7th Cir. 2004), *citing* Gilbert v. Homar, 520 U.S. at 931-32 (1997)(*quoting* Mathews, 424 U.S. at 335).

Pre-deprivation process "need not be elaborate or extensive" if "substantial post-deprivation process is available." Id. at 560. If full post-deprivation process is available, then pre-deprivation process is satisfied with oral or written notice of the proposed adverse action, an explanation of the evidence supporting that action, and an opportunity (even informal) for

the employee to "tell his side of the story."  Id., *quoting* Gilbert, 520 U.S. at 929 and omitting internal citations and quotations; Staples v. City of Milwaukee, 142 F.3d 383, 385 (7th Cir. 1998).  Deciding what pre-deprivation must be provided therefore depends in part on what post-deprivation process is available.

As to post-deprivation process, Defendants are correct that "[g]rievance procedures created by collective bargaining agreements can satisfy the requirements of due process for terminated employees." Hudson, 374 F.3d at 563 (7th Cir. 2004); Wallace v. Tilley, 41 F.3d 296, 302 (7th Cir. 1994)("This Court has explicitly recognized that 'a grievance procedure under a collective bargaining agreement can satisfy due process, even when a public employee has been discharged.'")(quoted and other cites omitted).

In Hudson, two Chicago police officers brought procedural due process claims regarding their terminations for absences.  The Seventh Circuit held that pre-deprivation process was required but had been provided.  The Seventh Circuit then addressed whether the post-deprivation process, the availability of a grievance procedure in a collective bargaining agreement, was sufficient:

> Plaintiffs argue that the CBA does not allow individuals to initiate grievance proceedings for AWOP terminations on their own. Even if this is true (the City insists that individuals may bring grievances on their own), the Plaintiffs could have sued the Union for breach of its duty to fairly represent their interests-the City should not be blamed for the mistakes of the Union. *See* Winston, 585 F.2d at 210. The CBA provides adequate post-deprivation due process. We therefore agree with the district court's finding that the Plaintiffs' due process rights have not been violated.

Hudson, 374 F.3d 554, 563-64; *see, e.g.,* Matthews v. Milwaukee Area Local Postal Workers Union, 495 F.3d 438, 441 (7th Cir. 2007)("A union breaches its duty of fair representation if its conduct is arbitrary, discriminatory, or in bad faith.").

Defendants allow, for purposes of this motion only, that Plaintiff was entitled to a pre-deprivation hearing.  (d/e 6, p. 3). Defendants contend that the facts as pled show that Plaintiff *did* receive that pre-deprivation hearing, through AFSCME's representation of Plaintiff's interest before the arbitrator.  They attach the agreement between AFSCME and the State of Illinois, arguing that it designates AFSCME as the "'sole and exclusive' bargaining representative" for Plaintiff.  (d/e 6, p.4, citing to p. 2 of agreement).  As to post-deprivation process, they contend that the grievance procedure set forth in the agreement provides all the process due under Hudson.

Plaintiff counters that the arbitration did not provide him with any pre-deprivation process since AFSCME was acting adverse to his interests and his side of the story was not represented. He argues that he had no post-deprivation process available to him because the agreement gives control over pursuing a grievance to AFSCME, the entity seeking to secure his demotion.

In the Court's opinion, the problem with Defendants' motion is not the arguments made but the procedural posture of this case. The Defendants' position is based in part on facts not alleged in the Complaint and therefore not properly considered by the Court on a 12(b)(6) motion to dismiss. For example, Defendants assert that Plaintiff's side was represented by AFSCME during the proceedings challenging his promotion, which is directly contrary to Plaintiff's allegations. Further, Defendants assert that "[w]hen a resolution could not be reached, AFSCME asked an arbitrator to decide which employee. . . should receive the promotion[,]" another proposed fact not in the record. (d/e 6, p. 4).

Likewise, Court does not believe that consideration of the agreement is appropriate on a 12(b)(6) motion (though Plaintiff does not object to its consideration). Documents attached to a motion to dismiss may be

considered "if they are referred to in the plaintiff's complaint and are central to the claim." Continental Casualty Co., 417 F.3d 727, 731 n.2 733 (7th Cir. 2005). The agreement is referenced in one paragraph of the Complaint, ¶ 18, to explain why the more senior applicant was promoted. However, from the allegations in the Complaint the agreement is not central to the due process claims, as those claims are framed by Plaintiff. Plaintiff grounds his claims in a constitutionally protected property interest in the sergeant position created by the Personnel Code and rules. No doubt the agreement is relevant, and perhaps dispositive, but its consideration should await a fully developed record and summary judgment. Further, the agreement attached by Defendants is not even complete or authenticated–Plaintiff attaches a section of it that was not attached to Defendants' motion. (d/e 10, p. 17).[1]

Further, the cases cited by Defendants finding grievance procedures provide sufficient post-deprivation process are arguably distinguishable at this point. In those cases the plaintiffs *did* receive pre-termination process in the form of notice of the proposed action and charges and some sort of

---

[1]In any event, at this juncture it is not clear how the section of the agreement cited to by Defendants supplants all pre-termination process that may have been owed to Plaintiff.

opportunity to meet those charges. *See, e.g.,* Hudson, 374 F.3d at 562 (notification letter and opportunity to submit memorandum/additional information to commander); Wallace, 41 F.3d 296 (7th Cir. 1994)(written notice and opportunity to appear at hearing); Winston, 585 F.2d 198 (7th Cir. 1978)(30 day notice and right to file grievance). "[D]ue process requires pre-termination notice and an opportunity to respond even where a CBA provides for post-termination procedures that fully compensate wrongfully terminated employees." Chaney v. Suburban Bus Division of the Regional Transportation Authority, 52 F.3d 623, 629 (7th Cir. 1995). Thus, even if the post-deprivation grievance procedures are adequate, they do not retroactively cure insufficient pre-deprivation process.

In contrast to the cases cited by Defendants, the plaintiff here allegedly received no notice of his proposed demotion or an opportunity to explain his side before he was demoted. He argues that the arbitration was a "sham" because AFSCME was acting adverse to him, citing Ryan v. Illinois Dep't of Children and Family Serv., 185 F.3d 751, 762 (7th Cir. 1999)(fact dispute existed regarding whether pre-termination hearing was "sham" because officials had already decided to fire employees). Defendants do not address these arguments.

The Court also notes that the cases cited by Defendants were decided on summary judgment, which demonstrates that the depth of factual inquiry often required to resolve the claim.  *See, e.g.,* Hudson, 374 F.3d at 563 (7th Cir. 2004)(summary judgment); Buttita, 9 F.3d 1198 (7th Cir. 1993)(same); Winston v. United State's Postal Serv., 585 F.2d 198 (7th Cir. 1978)(same); *see also* Sonnleitner v. York, 304 F.3d 704, 713 (7th Cir. 2002)( . . . "minimum procedural due process requirements ultimately turn on a highly fact-specific inquiry."); *see also* Wallace v. Tilley, 41 F.3d 296 (7th Cir. 1994)(decided on summary judgment).

In sum, Defendants' arguments go more to the merit of Plaintiff's claims, not to whether Plaintiff has stated claims.  Plaintiff alleges that he had a property interest in his sergeant job and was demoted with no meaningful opportunity to contest it either before or after that demotion. His claim is "plausible" in the notice-pleading sense of that term and provides sufficient notice for the Defendants to prepare their defense.

## II.  Qualified Immunity

"The pleading standard is no different simply because qualified immunity may be raised as an affirmative defense."  Tamayo, 2008 WL 2168638 * 13, *citing* Crawford-El v. Britton, 523 U.S. 574, 595 (1998).

"When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" Brosseau v. Haugen, 125 S.Ct. 596, 598 (2004), *quoting* Saucier v. Katz, 533 U.S. 194, 201 (2001).  Plaintiffs are not required to plead facts to defeat qualified immunity:

> In addressing the district court's denial of defendants' motion to dismiss based on qualified immunity, we note that a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. *See* Jacobs v. City of Chicago, 215 F.3d 758, 765 n. 3 (7th Cir.2000). Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: "[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." Id. As noted in Jacobs' concurrence, "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal .... and when defendants do assert immunity it is essential to consider facts in addition to those in the complaint." Id. at 775 (Easterbrook, J., concurring).

Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001).

Defendants posit that "inasmuch as it was not clearly established that the grievance procedures available to Plaintiff did not provide all the process he was due, Defendants are entitled to qualified immunity with respect to Plaintiff's procedural due process claims."  (d/e 6, p. 7).

The problem is that the record needs factual development on what pre-termination process was actually afforded Plaintiff in order to determine whether his procedural due process rights were violated, regardless of the adequacy of the post-deprivation grievance procedures. The due process inquiry requires consideration of the process provided as a whole, both before and after, viewed in context of the particular facts of the case. Accordingly, the Court will recommend that a conclusive decision on qualified immunity await a further developed factual record. *See* Fairley v. Fermaint, 482 F.3d 897, 901-02 (7th Cir. 2007)(rule that interlocutory appeal clock starts to run when the district court conclusively denies a motion on qualified immunity "relieves public officials from any pressure to take what may be premature appeals from orders declining to dismiss complaints.").

**III. Sovereign Immunity**

An action against Defendants in their official capacities is effectively an action against the State of Illinois. Thomas v. Walton, 461 F.Supp.2d 786, 799 (S.D. Ill. 2006). Eleventh Amendment sovereign immunity protects States from lawsuits for damages, unless that protection is abrogated by federal statute or waived by the State itself. Id. An exception exists, however, for actions against the State for prospective

relief to cure ongoing violations. Power v. Summers, 226 F.3d 815, 818-820 (7th Cir. 2000).

Plaintiff seeks injunctive relief in the form of reinstatement to his job as a sergeant. Defendants cite Sonnleitner v. York, 304 F.3d 704 (7th Cir. 2002), in which the Seventh Circuit held that a plaintiff's "request for reinstatement to a supervisory position can certainly be characterized as prospective relief, but we do not believe that the underlying procedural due process claim can be reasonably construed as 'ongoing.'" 304 F.3d at 718. The plaintiff in Sonnleitner challenged his demotion on procedural due process grounds: he asserted that the pre-disciplinary hearing was inadequate and the post-disciplinary hearing was unconstitutionally prolonged. The Seventh Circuit found that issues of fact did exist on those claims, but also found that the defendants were protected by qualified immunity. The Court next concluded that the plaintiff could not seek injunctive relief in the form of reinstatement to the supervisory position. The Court reasoned that "the violation was not the demotion as such, but instead, the fact that the demotion occurred without an adequate opportunity to be heard, either through an additional pre-disciplinary hearing or a sufficiently prompt post-disciplinary hearing." 304 F.3d at 718.

The Court found no ongoing violation because, by the time the plaintiff brought his procedural due process claim, he had already received a constitutionally adequate post-deprivation proceeding before a commission that had found in his favor. 304 F.3d at 718.

Sonnleitner is instructive here, but not necessarily controlling, because the claimed procedural due process violation is past. Like the plaintiff in Sonnleitner, Plaintiff's claim is about his lack of notice and an opportunity to be heard. It seems that the remedy for that violation, assuming it is in some sense ongoing, is notice and an opportunity to be heard, not reinstatement. *See* Dargis v. Sheahan, — F.3d —, 3008 WL 2066991 (7th Cir. 2008)(affirming district court's finding of procedural due process violation and ordering sheriff to hold hearing instead of proceeding to trial on damages).

However, the Seventh Circuit in Sonnleitner also remarked that reinstatement pending an opportunity to be heard might be appropriate injunctive relief in a case where that opportunity has not been provided when the lawsuit is filed. 304 F.3d at 718. Plaintiff alleges he had no opportunity to be heard at any time. Defendants do not specifically address the possibility of injunctive relief "directing a hearing or reinstating .

. .[Plaintiff] to sergeant pending an opportunity to be heard." (Plaintiff's Memorandum, d/e 10, p. 25). At this point, the Court cannot confidently rule out the possibility of all prospective relief.

WHEREFORE, the Court RECOMMENDS that Defendants' Motion to Dismiss be denied (d/e 5).

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:   June 4, 2008

*s/ Byron G. Cudmore*
_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE