**E-FILED**
Thursday, 08 July, 2010  02:51:30 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TRAVIS W. MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. 07-1253 |
| | ) |
| FRANK L. SHAW, | ) |
| ROGER E. WALKER, JR., BARBARA | ) |
| HURT, RICHARD BARD, LAURA | ) |
| NORTON, and PAUL CAMPBELL, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Now before the Court is Defendants Frank L. Shaw's, Roger E. Walker, Jr.'s, Barbara Hurt's, Richard Bard's, Laura Norton's, and Paul Campbell's Motion for Summary Judgment. For the reasons set forth below, Defendants' Motion [#20] is GRANTED.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted in the Complaint present federal questions under 42 U.S.C. § 1983 ("Section 1983").

## BACKGROUND

Plaintiff Travis W. Moore ("Moore") has been employed by the Illinois Department of Corrections ("IDOC") since September 16, 1996.  In 2004, Moore held the rank of correctional officer, and was assigned to the Hill Correctional Center ("Hill"), which was operated by IDOC. Both correctional officers and sergeants at Hill are part of the RC-6 bargaining unit for the American Federation of State, County and Municipal Employees ("AFSCME") union (hereinafter "Union").  The Union serves as the exclusive bargaining representative for its

members, including Moore, pursuant to its collective bargaining agreement ("CBA") with the

State of Illinois.

In December 2003, IDOC posted information regarding the vacancy of five correctional

sergeant positions at Hill. IDOC's Employment Bid Record for the correctional sergeant

positions shows that 29 people bid on the five vacancies.[1]  *See* Dft's Motion for Summary

Judgment ("MSJ"), Exh. 3. The filling of the five vacancies was governed by the CBA. A

Memorandum of Understanding ("MOU") between AFSCME and IDOC set forth the

instructions for how candidates for sergeant would be evaluated. Pursuant to the MOU,

applicants for sergeant were evaluated in 7 categories, and the applicants would receive a copy

of the interview and evaluation sheet at the time they bid for the position. The best possible

score, averaging all three interviewers' scores, was 70. The MOU further provided: "A

variation of 10 points between candidates' scores is an indication of relatively equal ability. If

the difference in points between candidates is 10 or less, the most senior candidate will be

selected." Dft's MSJ, Exh. 6, p. 00393. Therefore, if the less senior candidate's score was more

than 10 points higher than a more senior candidate's score, the less senior candidate would be

awarded the position.

The MOU set forth the seven categories of evaluation: educational achievement, use of

time, disciplinary action, written reports, supervisor's evaluation, experience, and interview (by

three interviewers). The highest scoring applicant for the five vacant sergeant positions received

---

[1]  The record is unclear as to the exact number of applicants for the five sergeant positions, as 26, 28, 29, and 30 are all cited by the parties at different times. Moore states that 30 individuals bid on the five positions, while Defendants state that 28 individuals bid. Defendants cite Moore's deposition where he states that roughly 26 or 29 people interviewed for the vacancies, but they also cite the Employment Bid Record that shows 29 people bid. The Arbitrator's Award states that 28 applications were received at Hill. *See* Dft's Exh. 6, p. 00398.

a 70, Moore and another applicant each received the next highest score of 63, a fourth applicant received a 60, and the fifth highest score was 59. The evaluators drew the line at 60, then redrew it at 59, taking the most senior person in the second pool in order to fill the fifth vacancy. On February 23, 2004, Moore was one of the five applicants chosen to fill the vacancies, and he was promoted to sergeant at Hill in March 2004. Moore proceeded to work in his new position as correctional sergeant for more than 6 months.

Before Moore learned of his promotion, on or about January 27, 2004, the local Union 1274 filed a contract grievance in which it challenged Hill Correctional Center management's scoring of the candidates for the 5 vacant sergeant positions. The grievance contended that procedures in the MOU were not followed, specifically that candidates were scored incorrectly, and that the line redrawing to measure relative equality among candidates was not properly done. Moore had previously learned, during an executive board meeting, that the Union was going to file grievances regarding the sergeant promotions because it believed there was cheating and the process was not done fairly. Pursuant to the CBA, the grievance process consisted of four levels. At the first level, the grievance is submitted by the Union to an immediate supervisor. AFSCME-State of Illinois CBA, pp.5-6. If there is no resolution, the Union submits its grievance at the second level, to the warden of the correctional center. *Id*. at 6-7. When no resolution is reached there, its grievance is presented at the third level, to the Agency Head. *Id*. at7. At the fourth level, the Union may appeal the grievance to a pre-arbitration staff meeting, which means that the Illinois Department of Central Management Services ("CMS") labor relations division becomes involved to attempt resolution. *Id*. at 7-8. Finally, when the grievance process remains unresolved at the fourth level, the Union submits the grievance to

binding arbitration.  *Id*. at 8-9.  The CBA provides that "The decision and award of the arbitrator shall be final and binding on the Employer, the Union, and the employee or employees involved."  *Id*. at 9.

Local Union 1274's grievance remained unresolved through all four levels, and so it was submitted to binding arbitration.  On June 1, 2, and 9, 2005, the arbitrator held a hearing on the Union's grievance, during which the Union and IDOC management presented testimony and evidence.  Steve Sturm, an attorney employed in labor relations at CMS, represented IDOC and CMS.  Sturm, Patricia Torri, IDOC's northern region labor relations administrator, and Justin Smock, IDOC's assistant chief of labor relations, prepared for the arbitration by assisting Hill Correctional Center, gathering documentation, and selecting and prepping witnesses.

On August 15, 2005, the arbitrator issued his decision.  He determined that the scorers at Hill did not have a consistent standard to use in scoring for the experience category.  The arbitrator further determined that the MOU required documentation for any claim of outside experience or internal training, and that what the facility can accept as documentation for claims of experience was up to the facility to decide, within reason.  As a result, the arbitrator proceeded to review the Hill sergeant promotion candidates' individual interview packets on the criterion of "Experience."  The arbitrator noted that Moore received 2 points for documented outside experience, and 3 points for undocumented Departmental Training.  He determined that given the lack of any documentation for the Departmental Training, awarding points for that violated the MOU, and so the arbitrator reduced Moore's score for experience by 3 points.  The arbitrator adjusted the scores to account for the errors he discussed, and ranked the top candidates in score order.  The arbitrator also determined that IDOC failed to appropriately redraw the line, pursuant

to the MOU, in order to select from a group of relatively equal candidates.  Once he properly

redrew the line to select from a group of relatively equal candidates, Moore was no longer one of

the five applicants to be promoted.  The arbitrator ultimately made the Award that the sergeant's

promotion originally offered to Moore should instead go to Officer Hall, as he was senior to

Moore.  The arbitrator further stated that Hall's promotion was to be retroactive to the date on

which Moore was promoted, and that the newly promoted officer was entitled to back pay and

credit for service as a Correctional Sergeant for that date.  Dft's MSJ, Exh. 6, p. 45.

Moore did not know where the arbitration hearing was held or when it was held, he was

not called as a witness at the hearing, and no representative of either IDOC or CMS contacted

him concerning anything associated with his promotion.  Torri, in preparing IDOC's case for the

arbitration hearing, was aware that the Union made claims of improper point awards to the

successful candidates, but she did not look into that issue and knew of no one else involved in

the preparations who did.  During her deposition, Torri stated that a person could not have

testified during the arbitration unless one side or the other called the person to do so, and she did

not know what information the arbitrator had in front of him regarding Moore's experience.

Moore received a copy of the arbitration decision shortly after it was made.  Torri met

with Hill Correctional Center's warden, Defendant Frank L. Shaw ("Warden Shaw"), to discuss

the arbitrator's award, and directed him on how to implement the award.  Thereafter, Warden

Shaw attempted to retain Moore in a sergeant position, and had discussions with the Union about

retaining Moore as a sergeant.  The Union indicated to Warden Shaw that the arbitration award

was very specific, that Moore was not to be a sergeant because someone else was entitled to the

position, and that the Union was unwilling to make a change or allow Moore to retain the

sergeant position.  On September 9, 2005, Moore was given written notice of his demotion from sergeant to Correctional Officer.  Moore did discuss his demotion with Warden Shaw before it became effective, and Shaw indicated that he would see if Moore could remain a sergeant. Warden Shaw subsequently informed Moore that he could not be retained as sergeant.  Moore also approached the Union to file a grievance on his behalf in regard to the demotion, but the Union refused to do so because his demotion had already been decided in the arbitration. Moore's demotion was effective on September 26, 2005.  After that, there was some further attempt made to file a grievance regarding Moore's demotion, but it was not pursued.

On September 26, 2007, Moore filed his Complaint pursuant to 42 U.S.C. § 1983 against Warden Shaw, Roger E. Walker, Jr. ("Walker"), IDOC's Director, Barbara Hurt, IDOC's Deputy Director, Richard Bard, IDOC's Chief of Labor Relations, Laura Norton, IDOC's Chief of Personnel, and Paul Campbell ("Campbell"), Director of CMS.  Moore named each of the defendants in their individual and official capacities, alleging that his demotion occurred in violation of his rights under the Due Process Clause of the Fourteenth Amendment.  Defendants have filed the instant Motion for Summary Judgment, the matter is fully briefed, and this Order follows.

## DISCUSSION

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 931 (7th Cir. 1995). Finally, where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

## Section 1983 Liability

Section 1983 imposes liability where a defendant acts under color of state law and the defendant's conduct violated the plaintiff's rights under the Constitution or laws of the United States. 42 U.S.C. § 1983. To establish a cause of action under § 1983, the plaintiff must allege 1) that the defendant has deprived him of a federal right, and 2) that the defendant acted under

color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Here, Moore alleges that the Defendants violated his Fourteenth Amendment Due Process rights.

In order to establish that his due process rights were violated, a plaintiff must demonstrate: 1) that the defendant deprived him of a constitutionally protected liberty or property interest, and 2) that the deprivation was without sufficient procedural protections. *Williams v. Seniff*, 342 F.3d 774, 786-87 (7th Cir. 2003); *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989).[2]

Here, in moving for summary judgment, and before addressing Moore's procedural due process claim, Defendants contend that Moore cannot establish that they were personally involved in any alleged constitutional violation. "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation ." *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591, 595 (7th Cir. 1986), *citing Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). An official can be personally liable under § 1983 for the deprivation of a constitutional right where the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). "That is, he must know about the conduct and facilitate it, approve it, condone it, or turn

---

[2] In his Response to Defendants' Motion for Summary Judgment, Moore states that "[t]hrough discovery, it was revealed that Defendants Hurt and Bard played no role in the events giving rise to Moore's claim, and Defendant Norton's role, if any, was limited to processing paperwork relating to Moore's demotion." Response to MSJ, p. 3 n.2. As a result, Moore represents that he agrees to the dismissal of this lawsuit against those three Defendants, leaving Defendants Shaw, Walker, and Campbell as the remaining defendants. The Court will therefore limit its consideration to the remaining three defendants.

a blind eye.  In short, some causal connection or affirmative link between the action complained

about and the official sued is necessary for § 1983 recovery."  *Gentry*, 65 F.3d at 561.

Defendants argue that Moore cannot establish the requisite causal link between any

actions or inactions on their part and the alleged failure to provide Moore with a pre-deprivation

or post-deprivation hearing in regard to his demotion.  Specifically, Defendants argue that

Defendant Campbell, then-Director of CMS, was not personally involved in the alleged

deprivation simply because his name appears on the document notifying Moore of his demotion

where Campbell did not see the document, it was not signed by him, and where there is no

evidence that he had any knowledge of the circumstances surrounding Moore's demotion or that

he was involved in any way in Moore's demotion.  Moore argues that it was only Campbell, as

Director of CMS, who could approve Moore's demotion and that Illinois' Personnel Code, 20

ILCS 415/1 *et al.*, does not permit him to delegate that authority to others.  Moore further argues

that given that Campbell was required to approve Moore's demotion, and the existence of

protocols within CMS authorizing Campbell's signature to be affixed to documents such as the

demotion notification, a reasonable trier of fact could conclude that Campbell turned a blind eye

to the process giving rise to Moore's demotion.[3]

Moore makes a similar argument that a reasonable trier of fact could conclude that

Defendant Walker's, Director of IDOC at the time of Moore's demotion, signature on the

documents implementing the demotion was the product of a process in which he either approved

or turned a blind eye toward the process giving rise to Moore' demotion.  Moore alleges that his

---

[3] Campbell's name appears on CMS's "Notice of Approval by the Director of Central Management Services of Non-Appealable Charges," notifying Moore of his demotion and dated November 16, 2005.  Dft's MSJ, Exh. 13. Campbell did not actually sign his name, but rather someone else, apparently with signature authority did so, and initialed the signature. *Id.*

demotion could not have occurred without prior approval of IDOC's Director.  Defendants argue

that there is no evidence that anyone consulted with Walker or that he was otherwise involved in

any way with the decisions regarding Moore's demotion.

In *Crowder v. Lash*, the plaintiff brought suit against the Commissioner of Corrections of

the State of Indiana, the prison warden, the assistant warden, and the Director of Classifications

of the Indiana State Prison, alleging that they denied him his due process rights during

disciplinary proceedings pursuant to § 1983.  687 F.2d at 1001.  The plaintiff argued that the

Commissioner was personally responsible under § 1983 because the Commissioner was familiar

with the conditions in seclusion (where the plaintiff was placed), and because the plaintiff

actually informed the Commissioner by letter of the conditions and deprivations he experienced.

*Id.* at 1005-06.  The Seventh Circuit rejected the plaintiff's argument, stating that the "logical

import of [plaintiff's] theory . . . would be to hold any well informed Commissioner of

Corrections personally liable for damages flowing from any constitutional violation occurring at

any jail within that Commissioner's jurisdiction."   *Id.* at 1006. The Court upheld the district

court's directed verdict in the Commissioner's favor on the § 1983 claim where the plaintiff

presented no evidence to show that the Commissioner participated personally in any of the

deprivations and no testimony indicated that the challenged actions occurred at his direction or

with his express consent.  *Id.*  The Court also held, however, that a directed verdict in favor of

the assistant warden and director of classifications on the plaintiff's Fourteenth Amendment

allegations was error where the evidence indicated that those two men directly participated as

disciplinary committee members in the hearings of which the plaintiff complained.  *Id.*

In *Volk v. Coler*, the plaintiff brought a § 1983 action against a number of defendants

including the Director of Illinois' Department of Children and Family Services.  638 F. Supp.

1540, 1542 (C.D. Ill. 1986).  The Director of DCFS was informed of the plaintiff's grievance and

the grievance's progression through various levels.  *Id*. at 1545-46.  The Director testified that

third level hearings of employee grievances were technically supposed to be presented to him,

that they were in fact handled by the labor relations department, and that his sole function was to

"sign off" the necessary documents.  *Id*. at 1547.  The Court ultimately found that no reasonable

jury could infer that the Director of DCFS was personally involved in the plaintiff's claimed

deprivations of her rights where he had no direct involvement in the grievance process and did

not become personally involved in investigating the plaintiff's complaint.  *Id*. at 1549.  The

Court further explained:

> Director Coler's only participation in the entire grievance process was to assure the
> establishment of a structural review process and to approve the final decisions of the
> grievance committee.  In almost every organization, these kinds of decisions
> eventually require final approval by the head of the organization; such events,
> however, cannot alone form the basis for
> § 1983 liability.

*Id*.

Here, Moore relies upon the fact that without the final approval of CMS Director

Campbell and IDOC Director Walker, Moore's demotion could not have occurred.  Their

requisite prior approval, as Moore contends, does not allow for a reasonable trier of fact to

conclude that they each turned a blind eye to the process giving rise to Moore's demotion so that

they somehow caused or participated in the alleged constitutional deprivation.  Just as in

*Crowder* and *Volk*, Moore has presented no evidence of Campbell's and Walker's direct

11

involvement in the proceedings that actually led to the decision to demote him.  As *Volk*

provides, final approval of decisions such as the one to demote Moore is usually required of the

head of the organization, and that alone cannot form the basis for § 1983 liability.  *See Volk*, 638

F. Supp. at 1549.  Moore overlooks the fact that Campbell and Walker became involved only

after Moore's grievance had gone through several levels pursuant to the CBA, and only after the

arbitration proceeding during which it was determined that Moore's promotion was to go to

someone else, resulting in his demotion.  Moore has failed to create a genuine issue of material

fact as to whether Defendants Campbell and Walker were personally responsible so that they

may be held liable under § 1983.  Accordingly, Defendants' Motion for Summary Judgment is

granted in favor of Defendants Campbell and Walker.

Similarly, Moore fails to create a genuine issue of material fact as to whether Defendant

Warden Shaw was personally responsible for Moore's demotion so that Shaw may be held liable

under § 1983.  Moore merely contends that Shaw "clearly" participated in the demotion and cites

Defendant Norton's statement that a demotion of an employee in a correctional facility begins

with the warden.  Contrary to what Moore asserts, it was not Warden Shaw who began the

process of effecting Moore's demotion.  The process that led to Moore's demotion, and the

decision that another person was to get his sergeant promotion, had already occurred by the time

Warden Shaw became involved in "effecting" Moore's demotion.  Warden Shaw was required to

implement the arbitrator's award.  Significantly, neither party states that there was any action

taken to challenge or otherwise set aside the arbitrator's award.  Pursuant to the CBA between

the Union and the State of Illinois, the arbitrator's decision and award remained final and

binding upon IDOC, the Union, and Moore.  *See* AFSCME-State of Illinois CBA, p. 9.  Warden

Shaw's involvement following the arbitrator's award, and prior to Moore's demotion becoming

final, reveals nothing more than that Shaw attempted to help someone whom he believed to be a

good employee, and that he did what he could because he felt badly that things were happening

as they were.  *See* Shaw Deposition, Dft's MSJ, Exh. 11, pp. 22-23, 27-28.  Such involvement

does not create a genuine issue as to whether he sufficiently participated in the actions taken

against Moore to impose § 1983 liability against him.  Therefore, Defendants' Motion for

Summary Judgment is granted in favor of Defendant Warden Shaw because he lacked the kind

of personal participation in the alleged constitutional deprivation suffered by Moore that is

necessary to impose liability under §1983.

Moreover, it was Moore's union, AFSCME, that initiated the grievance procedure over

the promotion process which led to the arbitration, which then led to the decision that Moore was

improperly promoted to sergeant.  Indeed, it was AFSCME that took the actions that led to the

alleged deprivation of Moore's due process rights.  It was not the actions of Defendants

Campbell, Walker, and Shaw.  In arguing that he was deprived of a reasonable opportunity to

challenge his demotion, Moore contends, among other things:  1) that the arbitration proceeding

was not initiated to protect him or his promotion and it was AFSCME's objective to attack the

decision which led to his promotion 2) he was not invited to attend the arbitration hearing, 3)

Moore could not on his own behalf initiate a grievance challenging his demotion, and 4) Moore

made multiple efforts to have AFSCME pursue a grievance on his behalf following the

demotion, but that AFSCME consistently refused his requests and no grievance was ever filed.

Plf's Response to MSJ, pp. 23-24.  His repeated contentions that AFSCME was his adversary in

the arbitration and its refusal to file a grievance over his demotion belie the argument that

Defendants are liable for the alleged procedural due process violation in this case.

In essence, Moore seeks to challenge the actions of his Union under the guise of a § 1983 action.  *See Papapetropoulous*, 795 F.2d at 596 (court was "at a loss to understand how" the plaintiff could argue that his former employer was the party responsible in a § 1983 action where he alleged that procedures use by an independent arbitrator denied him due process).  Moore dismisses Defendants' argument that he could have sued the Union for breaching its duty to fairly represent him.  *See Hudson v. City of Chicago*, 374 F.3d 554, 563-64 (7th Cir. 2004) (explaining that the employer should not be blamed for the mistakes of plaintiff's union where plaintiff argued that the applicable CBA did not allow individuals to initiate grievance proceedings on their own); *Matthews v. Milwaukee Area Local Postal Workers Union*, 495 F.3d 438, 441 (7th Cir. 2007) (discussing the circumstances under which a union breaches its duty of fair representation).  Moore's own arguments explaining why a fair representation claim would be unavailing, and why he did not pursue an appeal to the Illinois Civil Service Commission do not change the fact that Defendants Campbell, Walker, and Shaw simply lack the kind of personal involvement necessary to a finding of liability for the alleged constitutional deprivation of which Moore complains.

**CONCLUSION**

Accordingly, for the reasons set forth above, Defendants' Motion for Summary Judgment [#20] is GRANTED.  Given Plaintiff Moore's representation that he agrees to the dismissal of

this lawsuit against Defendants Hurt, Bard, and Norton, Moore is directed to file a Notice of

Dismissal within seven days of the date of this Order.

ENTERED this 7th day of July, 2010.


s/Michael M. Mihm

Michael M. Mihm
United States District Judge